IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MÁXIMO VILLALOBOS, et al.,

Plaintiffs

v.                                                                CIVIL 97-1589 (JAG)

NORTH CAROLINA GROWERS
ASSOCIATION, INC., et al.,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiffs, Puerto Rican migrant agricultural workers, commenced this civil action on April 21, 1997.[1] Their complaint, as amended,[2] alleges that the defendants —numerous North Carolina agricultural employers and the North Carolina Growers Association, Inc. (NCGA)— have willfully and knowingly violated the Migrant and Seasonal Agricultural Workers Protection Act (AWPA), specifically 29 U.S.C. §§ 1821, 1822, 1823, and 1855.[3]

On June 27, 2000, the defendants filed a "Motion to Dismiss Claims of Certain Plaintiffs and for Sanctions Pursuant to the Federal Rules of Civil Procedure 37 and 41(b)."[4] Therein, defendants complain of the alleged failure of eleven plaintiffs to respond to defendants' interrogatories,[5] of seven plaintiffs to attend their depositions,[6] of others to

---

[1] Docket No. 1.
[2] Docket No. 17.
[3] This complaint was amended on July 18, 1997, by the addition of four new plaintiffs and two new defendants. (Docket No. 12.)
[4] Docket No. 113.
[5] These eleven plaintiffs are Luis Bassatt, Miguel Camacho Rivera, Edwin Febus Rivera, Flor Lugo Torres, Wilson Morales, José Ponce Acevedo, Carlos Rubén Ríos Cruz, Enrique R. Rivera Rolón, Carlos Santiago, Enrique Vélez Cruz, and Rafael Vélez.
[6] These seven plaintiffs are Luis Bassatt, Miguel Camacho Rivera, Félix Felicier, Flor Lugo Torres, José Enrique Lugo, Wilson Morales, and Rafael Vélez.

CIVIL 97-1589 (JAG)                                        2

respond before January 30, 2000, and of one —Wilson Morales— to make any appearances through counsel. Subsequently, on August 14, 2000, the plaintiffs filed their oppositions.[7]

I recommend that defendants' motion to dismiss the claims of plaintiffs Luis Bassatt, Miguel Camacho Rivera, Edwin Febus Rivera, Félix Felicier, José Enrique Lugo, Flor Lugo Torres, José Ponce Acevedo, Carlos Rubén Ríos Cruz, Enrique R. Rivera, Carlos Santiago, Enrique Vélez Cruz, and Rafael Vélez be DENIED.

In light of the court's order of April 11, 2000,[8] I recommend that the court GRANT the defendants' request for dismissal of plaintiff Wilson Morales' claims.

I further recommend that the court DENY the defendants' request for the imposition of sanctions on any of the plaintiffs or their counsel.

I. Standards for Motion to Dismiss Under Fed. R. Civ. P. 41(b)
and for Motion for Sanctions Under Federal Rules of
Civil Procedure 37(b)(2)(C) and 37(d).

Subsection (b) of the Federal Rule of Civil Procedure 41 provides for the involuntary dismissal of the action where the plaintiff has failed to prosecute or to comply with the Federal Rules of Civil Procedure or any order of the court. As to Federal Rule of Civil Procedure 37(b)(2)(C), the rule provides that where a party fails to obey an order entered under Federal Rule of Civil Procedure 26, the court may make such orders in regard to the party's failure as are "just," among which the rules include the granting of dismissal.

In determining whether to dismiss for failure to comply with discovery orders, a district court is required to consider the full record. See Link v. Wabash R. Co., 370 U.S. 626, 633-34 (1962). The ultimate decision as to whether or not the record supports the imposition of any sanctions, and the choice of sanctions therein, rests within the discretion of the court. See Marx v. Kelly, Hart, & Hallman, P.C., 929 F.2d 8, 10 (1st Cir. 1991);

---

[7] Docket No. 134.

[8] See Docket No. 74, court's order of April 10, 2000.

CIVIL 97-1589 (JAG)                                3

United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 641 (1st Cir. 1988); Spiller v. United States V. Laboratories, Inc., 842 F.2d 535, 537 (1st Cir. 1988).

Dismissal under Rule 37 should not be authorized when, as here, it has been established that petitioner's noncompliance with a pre-trial production order has been due to the party's unwilling inability, and not willfulness, bad faith, or any fault of petitioner. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640, 643 (1976) (citing at 640 Societe Internationale v. Rogers, 357 U.S. 197, 212 (1958)).

## II. Factual background

Plaintiffs' initiation of the discovery process began on January 5, 1998, when plaintiffs' counsel served interrogatories and requests for production upon the defendants. Though their response deadline had been set for June 23, 1998, the defendants chose not to respond until August 1998, and even then they failed to provide all of the information requested. Following several discussions seeking to ensure and facilitate defendants' willing compliance, plaintiffs agreed in good faith to substantially limit their requests for information they nonetheless felt entitled to discover pursuant to Federal Rule of Civil Procedure 26(b).[9] Still, at least 15 of the 51 defendants did *not* file a response to the plaintiffs' request for production *within a year* of its receipt by defendants. As of April 13,

---

[9] Federal Rule of Civil Procedure 26(b)(1) establishes that, unless altered by a court's order or a local rule,
> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

CIVIL 97-1589 (JAG)                                      4

1999, for instance, at least six defendants had wholly failed to respond to all of the plaintiffs' first set of interrogatories and at least 13 had not filed any responses to the plaintiffs' first request for production.[10] Yet, notwithstanding the two motions to compel under Federal Rule of Civil Procedure 37 pending against the defendants, one filed on April 13, 1999,[11] another on June 30, 2000,[12] they have decided to file a motion to dismiss, insisting on sanctions against the plaintiffs.[13]

The defendants themselves did not begin their discovery upon plaintiffs until April 9, 1999 —more than a year after plaintiffs had done the same. Though the discovery deadline had been set for May 12, 1999, the parties agreed to request an extension. They did this on July 9, 1999.[14] As stated in plaintiffs' response to the motion to dismiss, this decision stemmed from the recognition that plaintiffs' counsel would need more time given the number of plaintiffs, the language barrier, the extensive information sought in the defendants' interrogatories, the amount of information to be translated, and given that at the time the discovery orders were served some of the more than 70 plaintiffs were

---

[10] See Docket No. 30, plaintiffs' "Motion to compel," filed on April 13, 1999. The defendants that had not filed any answers to their interrogatories included Bert Dixon, Paul Douglas, Miles Jackson, Morris Murphy, Jimmy Ross, and Ted West. The defendants that had not filed their responses to the plaintiffs' request for production included NCGA, Kent Bennett, Gregg Bennett, Bert Dixon, Larry Eason, David Godwin, Miles Jackson, Hursel Johnson, R.D. Lee, Dean Moore, Randy Rosser, Albert Slaughter, Steve Thomas, and Leonard Webster.

[11] See Docket No. 30. This motion concerns some of the matters to which the defendants to refused respond following the plaintiffs' request for discovery on January 5, 1998.

[12] This motion concerns materials which the defendants had promised to provide the plaintiffs following their several conferences with the plaintiffs in the fall of 1998 concerning the plaintiffs' request for discovery on January 5, 1998.

[13] See Docket No. 113.

[14] See Docket No. 32, "Joint Motion to Extend Scheduling Order."

CIVIL 97-1589 (JAG)                                        5

beginning to migrate to the United States for the agricultural season.[15] The court then set a new discovery dateline for February 29, 2000,[16] which later, following the parties submission of a joint motion,[17] the court rescheduled for April 28, 2000.[18]

Throughout this period, plaintiffs' counsel apparently had worked diligently to obtain the needed information from the 78 plaintiffs —most of which have limited abilities in English and some of which even have limited literacy skills in Spanish.[19] Additionally, plaintiffs' counsel labor-intensive task was further complicated by the plaintiffs' indigence, their lack of transportation, their lack of legal sophistication (relative to the defendants), the fact that some of them have continued to migrate seasonally to the United States mainland for agricultural employment, and the disruption caused to the plaintiffs by Hurricane Georges, during which some of them lost their homes.[20]

With this background, defendants' filed a motion to compel on December 3, 1999.[21] On December 9, with just a few days' notice, defendants' counsel canceled the defendants scheduled and agreed upon depositions without any reasonably excuse, stating only that the defendants would not be deposed until the plaintiffs' handed over their own written responses.[22] This attempt to interfere with the discovery process, however, was halted by

---

[15] See Docket No. 134, "Plaintiffs' Response to Defendants' Motion to Dismiss," at 5.
[16] See Docket No. 40, court's order, filed on July 14, 1999.
[17] See Docket No. 55.
[18] See Docket No. 57.
[19] See Docket No. 134, "Plaintiffs' Response to Defendants' Motion to Dismiss," at 6.
[20] Id. at 4.
[21] See Docket No. 44.
[22] See Docket No. 48. In addition, following the court's order to effect the depositions without waiting for the receipt of plaintiffs' responses, defendants' counsel filed a motion for clarification alleging that at no time had the defendants' agreed to the deposition schedule. See Docket No. 53, defendants' "Motion for Clarification," at 1. However, a

CIVIL 97-1589 (JAG)                                      6

the court's December 10, 1999 order.[23] Still, as late as May 31, 2000, the defendants had not yet provided plaintiffs with all information requested.[24]

Additionally, though the defendants complain that *they* had to postpone and reschedule the plaintiffs' depositions on various occasions, they deliberately fail to acknowledge that plaintiffs' counsel similarly accommodated the defendants and their counsel on numerous occasions. For instance, in order to save time and speed up the pre-trial depositions process, plaintiffs' counsel even attempted to aid defendants' counsel by scheduling the depositions of two plaintiffs concurrently. This ultimately did not occur, not due to plaintiffs' bad faith, but rather because the firm for which defendants' counsel works could not provide one additional lawyer to attend the depositions in North Carolina.[25]

In addition, several of the defendants' depositions had to be rescheduled, and on some occasions plaintiffs' counsel was informed on that day or only a day before. Yet, defendants complain about the plaintiffs' similar failure to inform them prior to the scheduled date about certain plaintiffs' inability to attend their depositions.[26] Plaintiffs' counsel also accommodated defendants by acceding to their counsel's request to schedule

---

page away, defendants' counsel contradicts its own statement and admits to having scheduled the said depositions and to having actually completed them. Id. at 2.

[23] Docket No. 51.

[24] See Docket No. 91, plaintiffs' "Motion to Enlarge Discovery Deadline for the Purpose of Requiring Defendants' to Respond to Plaintiffs' Requests."

[25] See Docket No. 134, plaintiffs' "Response to Defendants' Motion to Dismiss," at 7. In response to the defendants' "double-tracking" of the plaintiffs' depositions, plaintiffs' counsel —rather than stonewall defendants' discovery process— was required to enlist an additional attorney to attend the depositions. The defendants, however, ignore this matter, as well as many others, in their motion to dismiss. See Docket No. 134, plaintiffs' "Response to Defendants' Motion to Dismiss," at 8.

[26] See, e.g., Docket No. 113, "Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss," at 6.

CIVIL 97-1589 (JAG)                                              7

their depositions closer to the defendants' places of business.[27] This entailed the scheduling of depositions in three different locations in order to minimize the defendants' travel time.[28] In contrast, defendants' counsel insisted that all plaintiffs deposed in Puerto Rico had to be deposed in San Juan, at the defendants' counsel office, even though most do not live in the metropolitan area and did not have their own means of transportation or alternative and reliable public transportation.[29] While it is true that some of the plaintiffs have not yet been deposed, I find that the reasons behind this failure are reasonable and justifiable.[30]

As a result of the efforts of plaintiffs' counsel, plaintiffs —except for Félix Felicier and Flor Lugo Torres— had filed their sworn answers to the defendants' interrogatories and responses for production prior to the defendants' filing of their motion to dismiss on June 27, 2000. However, plaintiff Felicier, who has a fifth-grade education and limited analytical and literacy skills even in Spanish,[31] did supply defendants with his answers —though unsworn and unsigned— on the day of his deposition and was there questioned about them.[32] His attorney has ultimately provided defendants with his signed and sworn interrogatory answers.

Thus, even when these were admittedly late, plaintiffs have not only been willing to cooperate in the process of discovery, but were able to complete that phase of the process

---

[27] See Docket No. 113, defendants' "Motion to Dismiss," Exhibit 4, at 2.
[28] Id.
[29] Id. at 8.
[30] At the time of their scheduled depositions, both plaintiff Enrique Rivera Rolón and plaintiff Miguel Camacho Rivera were incarcerated, while plaintiffs José Ponce Acevedo and Enrique Vélez Cruz could be found in the United States mainland, employed in migrant agricultural farm work.
[31] See Docket No. 134, plaintiffs' "Response to Defendants' Motion to Dismiss," at 9.
[32] Id. at 10.

CIVIL 97-1589 (JAG)                                          8

in *little more than a year*. On the other hand, though the defendants themselves had a *year and a half* to do the same, as of the plaintiffs' filing of their June 30, 2000 motion to compel discovery under Federal Rules of Civil Procedure 37, defendants had failed to do so.

As plaintiffs argue in their opposition, courts have recognized the particular difficulties faced by migrant agricultural workers, and have emphasized the necessity of accommodating both the Federal Rules of Civil Procedure and the particular court's own regular practice to maximize the protection Congress intended to extend to these workers under AWPA.[33] In light of this precedent and given the particular hardships that both the plaintiff migrant workers and plaintiffs' counsel have had to endure and overcome,[34] I find that their belatedness was substantially justified and that any award of expenses to the defendants' is not justified.

---

[33] Aguero v. Christopher, 481 F. Supp. 1272, 1275 (S.D. Tex. 1980) (Noting the propriety of accounting for factors of public interest when making a determination potentially affecting the interests of migrant laborers. Congress, it continues, has expressed a public interest in protecting these workers, who "shift around the country to meet the needs of those employers who voluntarily use the resources of the federal government to secure workers."); Gurrola v. Griffin & Brand Sales Agency, Inc., 524 F. Supp. 115, 118 (S.D. Tex. 1980) ("It is well known that migrant laborers generally lack the financial resources necessary in order to prosecute a claim at such a distance from their homes .... Defendants herein have failed to make a specific showing of the relative inconvenience to them, which would outweigh those factors that suggest that Plaintiff should prevail ...."); Gómez v. Florida State Employment Serv., 417 F. Supp. 115, 118 (S.D. Tex. 1969 ("shift about the country to meet the needs of those employers who voluntarily use the resources of the federal government to secure workers.").

[34] These include the large number of plaintiffs, the language barrier, the extensive information sought in the defendants' interrogatories, plaintiffs' indigence, their lack of transportation, their lack of legal sophistication (relative to the defendants), the fact that given that at the time the discovery orders were served some of the more than 70 plaintiffs were beginning to migrate to the United States for the agricultural season, and the disruption caused to the plaintiffs by Hurricane Georges, during which several of them lost their homes.

CIVIL 97-1589 (JAG)                                    9

In view of the above, I recommend that the request for imposition of sanctions on any of the plaintiffs or their counsel and any award of expenses to defendants, be DENIED, and also I recommend that defendants' motion to dismiss the claims of plaintiffs, Miguel Camacho Rivera, Edwin Febus Rivera, Félix Felicier, José Enrique Lugo, Flor Lugo Torres, José Ponce Acevedo, Enrique R. Rivera, Carlos Santiago, Enrique Vélez Cruz, and Rafael Vélez be DENIED.

### Dismissal as to plaintiffs Luis Bassatt and Carlos Rubén Ríos Cruz

Given the change in counsel representing plaintiffs Luis Bassatt and Carlos Rubén Ríos Cruz, necessitated by restriction of plaintiffs' counsel federal funding, the court understands their need for an extension of time in order to fully respond to defendants' discovery requests. I thus recommend that the request for dismissal be DENIED as well as the requests for any imposition of sanctions on any of the plaintiffs or their counsel and any award of expenses to defendants.

### Dismissal as to plaintiff Flor Lugo Torres

By admission of plaintiffs' own counsel, plaintiff Flor Lugo Torres has not answered any of the interrogatories, has not been deposed, and his counsel has not even been able to establish communication with him.[35] I recommend that the complaint of Flor Lugo Torres be DISMISSED for lack of prosecution.

### Dismissal as to plaintiff Wilson Morales

Pursuant to the court's order of April 11, 2000, stating that plaintiff Wilson Morales' failure to make an appearance through counsel would result in the dismissal of his claims,[36] I recommend that his claims against defendants be DISMISSED.

---

[35] See Plaintiffs' "Response to Defendants' Motion to Dismiss," at 13. (Docket No. 134.)

[36] See Court's order of April 10, 2000. (Docket No. 74.)

CIVIL 97-1589 (JAG)                                    10

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within 30 days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 20th day of August, 2001.

*[signature]*
JUSTO ARENAS
United States Magistrate Judge