IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MÁXIMO VILLALOBOS, et al.,

Plaintiffs

v.                                          CIVIL 97-1589 (JAG)

NORTH CAROLINA GROWERS
ASSOCIATION, INC., et al.,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on plaintiffs' renewed motion to strike defendants', North Carolina Growers Association, Inc., (hereinafter "defendants") affirmative defenses of fraud and unclean hands, filed by plaintiff Máximo Villalobos (hereinafter "Villalobos") on July 5, 2000.[1] (Originally plaintiffs had filed a motion to strike or in the alternative, a motion for a more definite statement, on May 14, 1999. (Docket No. 34). In a twelve-page opinion issued by Judge Fusté, the court found that striking those two defenses at that juncture would be premature.) On August 21, 2000, defendants filed a memorandum in opposition to plaintiffs' motion to strike. (Docket No. 142.) Plaintiffs filed a reply memorandum on February 27, 2001. (Docket No. 179.) Finally, on August 27, 2001, defendants filed a surreply to plaintiff's renewed motion to strike the tenth and eleventh affirmative defenses. (Docket No. 184.)

---

[1] Plaintiffs' renewed motion to strike defendants' affirmative defenses of unclean hands and fraud was filed at the same time as "Plaintiffs' Motion for Partial Summary Judgment Against Defendants Ernest Evans, Phillip Aycock et al., O.G. Douglas et al. and Randy Rosser Under 29 U.S.C. § 1822(c) For Failure to Provide Field Sanitation Facilities Pursuant to Fed. Civ. Pro. R. 56(a)" on July 5, 2000. (Docket No. 117.) However, the renewed motion was never assigned a docket number. Thus the lack of reference to the same.



CIVIL 97-1589 (JAG)                    2

## I. Factual Background

On April 21, 1997, plaintiffs filed a complaint seeking statutory or compensatory damages, whichever was greater, as well as declaratory and injunctive relief. (Docket No. 1.) Plaintiffs seek to redress the wrongs they suffered when their rights were violated by defendants at the time defendants recruited them in Puerto Rico to perform agricultural work in North Carolina, and during the performance of such work. (Docket No. 1.) Plaintiffs' complaint asks this court to enter an order stating, among other things, that defendants violated recruitment disclosure provisions of AWPA; that defendants knowingly used false and misleading information in the clearance orders in violation of the AWPA; that defendants failed to comply with their working arrangements with plaintiffs, and awarding plaintiffs damages, costs and other reliefs. (Docket No. 1.)

Defendants' answer to plaintiffs' complaint, in particular the tenth affirmative defense, states that plaintiffs' cause of action may be barred in whole or in part by the doctrine of fraud. (Docket No. 33.) Plaintiffs originally argued that the special pleading requirements of Rule 9(b), Federal Rules of Civil Procedure, apply to the tenth affirmative defense, and that such requirements include date, time, place and facts supporting the fraud allegation. Defendants' eleventh affirmative defense states that plaintiffs' cause of action may be barred by the doctrine of unclean hands. (Docket No. 33.) Plaintiffs argue that this doctrine applies only when a party seeks affirmative relief, and when the plaintiff has engaged in deceit, fraud, or bad faith, which directly relates to the matter at issue. Defendants argue that plaintiffs had a significant involvement in the creation of the cause of action alleged in the complaint and were also responsible for the alleged contradictions found in the responses given by the plaintiffs in the interrogatories and at their depositions. (Docket No. 142.)

CIVIL 97-1589 (JAG)                              3

In the renewed motion to strike of July 5, 2000, plaintiffs argue that the affirmative defense of fraud is dependent upon plaintiffs' counsel having misrepresented to plaintiffs their legal rights regarding placement on farms with their friends and family members. Plaintiffs argue that, contrary to the defendants' position, plaintiffs had a firm basis in law for requesting to be placed with their friends and family, and that plaintiffs' counsel appropriately informed them of this right, offering to assist them in making the request. Plaintiffs argue that the fraud theory must fail since plaintiffs had a well-established right to be free of disparate treatment. Plaintiffs' counsel sought merely to advise United States workers of well-recognized rights, and aid plaintiffs and other workers to protect their interests and activities which were entirely proper. While plaintiffs yet must prove that the defendants treated plaintiffs disparately, it is arguably clear that separation from friends and family can be a sound basis for that claim. Plaintiffs also argue that their own alleged solicitation of the plaintiffs is not a legally sufficient basis for an affirmative defense of fraud or unclean hands. Plaintiffs argue that the depositions reflect that all plaintiffs consciously made decisions on their own as to how they came to be parties to this suit. There is no dispute that plaintiffs' counsel advised various plaintiffs who arrived in North Carolina in April, 1994 of the availability of legal services when plaintiffs were in the San Juan airport, the Miami airport, the packinghouse where NCGA assigned the plaintiffs to various farms, and, for some plaintiffs, advice was given at the labor camps in North Carolina where plaintiffs were residing. Plaintiffs argue in the memorandum that the defendants asked most of the plaintiffs about these activities and virtually every plaintiff answered these questions in their depositions. It is stressed that as legal services attorneys responsible for representing poor migrant farm workers in Puerto Rico and North Carolina, it was proper for them to inform Puerto Rican workers about their rights on NCGA's

CIVIL 97-1589 (JAG)                          4

contract and to make them aware of the availability of assistance from the North Carolina and Puerto Rico programs.

Similarly, plaintiffs argue that the affirmative defense of unclean hands is legally insufficient since they are based upon plaintiffs' counsel misrepresenting to plaintiffs their rights to be assigned at a farm with family members, and upon counsel providing them information. Plaintiffs argue that such advice as counsel gave has a solid basis in law, and their actions at airports and other places were well within the norms for outreach for migrant legal services programs, posing no violation to ethical rules. They conclude that NCGA has seen fit to use the tenth and eleventh affirmative defenses as an attempt to discredit plaintiffs' North Carolina counsel with organizations which provide other services, such as health care, to migrant farm workers.

In defendants' August 21, 2000 opposition to plaintiffs' motion to strike, the defendants stress that the affirmative defenses relate only to events which occurred in 1994. The defendants argue that plaintiffs' counsel created a non-existent cause of action in the amended complaint concerning placement of workers with family and friends; that they attempted to solicit plaintiffs to join a lawsuit; that there are contradictions between the depositions and the answers to interrogatories prepared by plaintiffs' counsel. The defendants insist that these affirmative defenses not be stricken prior to trial and they are entitled to present evidence of the same. They argue that plaintiffs' attorneys were actively involved in the recruitment and employment of United States workers on the two job orders filed by the NCGA, making reference to a memo (Goldstein Memo) which sets forth a plan of attack for legal services attorneys and advocates against the North Carolina H-2A program, almost two weeks before the migrant farm workers left Puerto Rico. The defendants argue that plaintiffs' counsel created a false expectation that plaintiffs had a legal right to work on a specific farm with persons of their choosing, a right which does not

CIVIL 97-1589 (JAG)                         5

exist considering that there were 300 farms for job orders seeking about 2,800 farm workers to work them.  The defendants make reference to interrogatory/deposition irregularities in that, for example, affidavits were produced of what the parties meant to say at their depositions, such as Máximo Villalobos, notwithstanding the transcript's reflecting the exact opposite testimony.  It is also alleged that the complaint was filed without the knowledge of some plaintiffs.  The defendants conclude that the motion to strike should be denied since there are factual issues regarding the events of 1994, involvement of legal services with the workers, and creations of their claims for this suit and participation by plaintiffs.

Plaintiffs reply that none of the conduct described by the defendants reflects that plaintiffs have come to this litigation with unclean hands.  They argue that there is nothing to suggest that plaintiffs created, participated in, or increased the unlawful conditions of breaches of contract of which they complain.  They stress that the affirmative defense of unclean hands is an equitable remedy and, by definition, would affect only the affirmative equitable relief sought by the plaintiffs, not the statutory relief nor damages sought by them under the law.  They conclude that since they have not requested affirmative equitable relief in their complaint, the affirmative defenses of fraud and unclean hands are not available.  Defendants' surreply repeats much of their previous argument and makes a significant issue of plaintiffs' doing an about-face in relation to the equitable relief they do or do not seek in the complaint.  They wish the court to consider plaintiffs' admission that they are not seeking equitable relief when it is time to enter judgment on their claims for declaratory and injunctive relief.

II. Motion to Strike, Fed. R. Civ. P. 12(f)

Federal Rule of Civil Procedure 12(f) states that:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon

1    CIVIL 97-1589 (JAG)                                6

2

3

4              motion made by a party within 20 days after the service of the
               pleading upon the party or upon the court's own initiative at
               any time, the court may order stricken from any pleading any
5              insufficient defense or any redundant, immaterial, impertinent,
               or scandalous matter.

6
Fed. R. Civ. P. 12(f); see also Morell v. United States, 185 F.R.D. 116, 117-119 (D.P.R.
7
1999); cf. Berke v. Presstek, Inc., 188 F.R.D. 179, 180 (D.N.H. 1998).
8
       "However, '[b]oth because striking a portion of a pleading is a drastic remedy, and
9
because it often is sought by the movant simply as a dilatory tactic, motions under Rule
10
12(f) are viewed with disfavor and are infrequently granted.'" Morell v. United States, 185
11
F.R.D. at 117 (citing Federal Deposit Ins. Corp. v. Niblo, 821 F. Supp. 441, 449 (N.D.
12
Tex. 1993)); see also Johnson v. Chrysler Corp., 187 F.R.D. 440, 441 (D. Me. 1999). "In
13
order to succeed on a motion to strike surplus matter from an answer, it must be shown
14
that the allegations being challenged are so unrelated to plaintiff's claim as to be unworthy
15
of any consideration as a defense and that their presence in the pleading throughout the
16
proceeding will be prejudicial to the moving party." Morell v. United States, 185 F.R.D.
17
at 117-18 (citing Federal Deposit Ins. Corp. v. Niblo, 821 F. Supp. at 449); see also Berke
18
v. Presstek, 188 F.R.D. at 180. The moving party bears the burden on a motion to strike.
19
Berke v. Presstek, 188 F.R.D. at 180. "It is clear, that if there are either questions of fact
20
or disputed questions of law, the motion must be denied." Gilbert v. Eli Lilly & Co., 56
21
F.R.D. 116, 121 (D.P.R. 1972); see also Johnson v. Chrysler Corp., 187 F.R.D. at 441;
22
Nelson v. University of Maine Sys., 914 F. Supp. 643, 647 (D. Me. 1996).
23
                          III.  Unclean Hands Doctrine
24
       "The maxim that 'he who comes into equity must come with clean hands' of
25
necessity gives wide range to a court's use of discretion." Three Blind Mice Designs, Co.
26
v. Cyrk, Inc., 892 F. Supp. 303, 313 (D. Mass. 1995) (citing K-Mart Corp. v. Oriental
27
Plaza, Inc., 875 F.2d 907, 912 (1st Cir. 1989) (citation omitted) (overruling "unclean
28

1    CIVIL 97-1589 (JAG)                                7

2

3
hands" defense without comment was not abuse of discretion by trial court)). "It is a self-
4
imposed ordinance that closes the doors of a court of equity to one tainted with
5
inequitableness or bad faith relative to the matter in which he seeks relief, however
6
improper may have been the behavior of the defendant." Precision Instrument MFG. Co.
7
v. Automotive Maint. Mach. Co., 324 U.S. 806, 814 (1945). "The doctrine of unclean
8
hands only applies when the claimant's misconduct is directly related to the merits of the
9
controversy between the parties, that is, when the tawdry acts 'in some measure affect the
10
equitable relations between the parties in respect of something brought before the court for
11
adjudication.'" Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867,
12
880 (1st Cir. 1995) (citing Keystone Driller Co. v. General Excavator Co., 290 U.S. 240,
13
245 (1933)).
14
        "Accordingly one's misconduct need not necessarily have been of such a nature as
15
to be punishable as a crime or as to justify legal proceedings of any character. Any wilful
16
act concerning the cause of action which rightfully can be said to transgress equitable
17
standards of conduct is sufficient cause for the invocation...." Precision Instrument MFG.
18
Co. v. Automotive Maint. Mach. Co., 324 U.S. at 815.
19
                              IV.  Fraud
20
        Rule 8(c) states that "[i]n pleading to a preceding pleading, a party shall set forth
21
affirmatively ... fraud ... and any other matter constituting an avoidance or affirmative
22
defense." Fed. R. Civ. P. 8(c). Rule 8(e)(1) goes on to say that "[e]ach averment of a
23
pleading shall be simple, concise, and direct. No technical forms of pleading or motions
24
are required." Fed. R. Civ. P. 8(e)(1). See Patriarca v. F.B.I., 639 F. Supp. 1193, 1197
25
(D.R.I. 1986); Newman v. Commonwealth, 115 F.R.D. 341, 342 (D. Mass. 1987).
26

27

28

1  CIVIL 97-1589 (JAG)                                8

2

3

4
                            V.  Discussion

5          Plaintiffs claim that defendants' pleadings of fraud and unclean hands lack legal

6  standing and therefore should be stricken from defendants' answer to the complaint.

7  Plaintiffs also argue that defendants are attempting to use the clean hands doctrine to

8  shield themselves from accountability for their wrongdoing.   (Docket No. 179.)

9  Defendants, on the other hand, claim that the affirmative defenses should not be stricken

10 from their complaint since through discovery they have obtained all of the information

11 which supports the same.  Defendants ask this court to deny plaintiffs' renewed motion to

12 strike and to allow defendants to present the evidence at trial. (Docket No. 142)

13         Defendants' allegations of fraud comply with the standard required by Rule 8(c).

14 The court must examine the totality of the circumstances to determine whether the general

15 language which has here been employed suffices to preserve the affirmative defenses of

16 unclean hands and fraud.  See Williams v. Ashland Eng'g Co., 45 F.3d 588, 593 (1st Cir.),

17 cert. denied, 516 U.S. 807 (1995), abrogated by Carpenters Local Union No. 26 v. United

18 States Fidelity & Guar. Co., 215 F.3d 136 (1st Cir. 2000).

19         Defendants' eleventh affirmative defense of unclean hands doctrine raises questions

20 of fact and brings forth disputed questions of law that cannot be resolved before trial.  See

21 Gilbert v. Eli Lilly & Co., 56 F.R.D. at 121.  Defendants claim that plaintiffs' counsel prior

22 to the time the workers left Puerto Rico played a central role in creating the underlying

23 events and circumstances that resulted in the present case. (Docket No. 142.)  Defendants

24 also argue that legal services attorneys attempted to create a cause of action concerning the

25 placement of plaintiffs and their families. (Docket No. 142.)  They also point to the fact

26 that there are numerous contradictions between the plaintiffs' response in their

27 interrogatories and depositions.  (Docket No. 142.)  The defendants have described

28 instances of conduct including some of plaintiffs' signed and sworn interrogatories which

CIVIL 97-1589 (JAG)                           9

contained statements and omissions concerning events in 1994 which in their depositions were later determined to be false. They also described the allegedly fraudulent conduct of plaintiff Efraín Alvarez when he signed a document entitled "Request to Select a Specific Employer" after he returned to Puerto Rico from North Carolina, with no intention of returning to that state. Such allegations are best left for the trier of fact to resolve at trial, particularly since a motion to strike is one which is generally looked upon with disfavor.

Plaintiffs seek equitable relief against the defendants in the complaint. They argued that the affirmative defense of unclean hands should be stricken because no equitable relief is sought in the complaint. The face of the complaint reflects that plaintiffs seek, among other remedies, equitable relief. (Declaratory and injunctive relief, as well as statutory or actual damages, whichever are greater, are sought.)

Generally speaking, a party must set forth all affirmative defenses in the pleadings, on pain of possible forfeiture. See Fed. R. Civ. P. 8(c); see also Conjugal P'ship Comprised by Joseph Jones & Verneta G. Jones v. Conjugal P'ship Comprised of Arthur Pineda & Toni Pineda, 22 F.3d 391, 400 (1ˢᵗ Cir. 1994). The defendants have clearly mapped out for the court the bases on which they have relied to support the affirmative defenses which plaintiffs seek to strike. More is not required unless such defenses are totally without merit, something they are not, or unless plaintiffs will suffer some prejudice at trial from the court's allowing the affirmative defenses to remain until that time.

In view of the above, I recommend that plaintiffs' motion to strike defendants' affirmative defenses of fraud and unclean hands be DENIED.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the

1    CIVIL 97-1589 (JAG)                    10

2

3

recommendation, or report to which objection is made and the basis for such objections.

4

Failure to comply with this rule precludes further appellate review. <u>See</u> <u>Thomas v. Arn</u>, 474

5

U.S. 140, 155 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>Davet v. Maccorone</u>, 973 F.2d

6

22, 30-31 (1ˢᵗ Cir. 1992); <u>Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.</u>,

7

840 F.2d 985 (1ˢᵗ Cir. 1988); <u>Borden v. Secretary of Health & Human Servs.</u>, 836 F.2d 4,

8

6 (1ˢᵗ Cir. 1987); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1ˢᵗ Cir. 1983); <u>United States v.</u>

9

<u>Vega</u>, 678 F.2d 376, 378-79 (1ˢᵗ Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616

10

F.2d 603 (1ˢᵗ Cir. 1980).

11

        In San Juan, Puerto Rico, this 27th day of February, 2002.

12

13

14

                                JUSTO ARENAS
15                         United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28